## In re HOWARD.

(District Court, N. D. California. March 31, 1900.)

No. 2,843.

1. BANKRUPTCY—RE-EXAMINATION OF CLAIM—BURDEN OF PROOF.

Where a creditor of a bankrupt presents a petition praying that the debt proved by another creditor may be re-examined, and reduced in amount, on the ground that it had been in part released and canceled by agreement of the parties before the bankruptcy, the burden of proof is on such petitioning creditor to establish the facts which he alleges.

2. SAME—PROVABLE DEBTS—RELEASE.

Where a bank made a written agreement with one of its debtors, stipulating that all money coming in to his credit for his business of the preceding year should be applied on his indebtedness for that year, and that all coming in to his credit for the business of the current year should be held for his credit for the business of that year, held, that there was no such waiver or release of the indebtedness then existing as would prevent the bank from proving a claim for the unsatisfied balance against the estate of the debtor in bankruptcy.

3. CONTRACTS—WRITTEN MEMORANDUM OF ORAL AGREEMENT.

Where parties make an oral agreement, and afterwards draw up a written memorandum on the same subject, referring to the fact of the previous agreement, and recognizing it as an existing contract, such memorandum, signed by the parties, must be taken as the highest evidence of the terms

of the original agreement; and, in the absence of clear and convincing proof that there was fraud or mistake in its execution, it is mutually binding on the parties and their privies.

In Bankruptcy. On review of decision of referee in bankruptcy.

H. V. Morehouse, for petitioner.

Jackson Hatch, for creditor.

DE HAVEN, District Judge. The Union Savings Bank of San Jose proved its claim against the estate in bankruptcy for the sum of $308,393.45. A petition was thereafter filed with the referee by J. M. Cox, a creditor of the bankrupt, asking that said claim be re-examined, and reduced to the sum of $70,913.79, upon the ground that all of that part of the claim which accrued prior to May 25, 1898, to wit, the sum of $237,479.66, had been released by an agreement entered into on May 25, 1898, between the bankrupt, Howard, and the said Union Savings Bank of San Jose, acting "through and by its president, H. Ward Wright, then and there duly authorized and empowered" to act for the bank in that matter. The petition further alleges that at the date referred to the bankrupt was unable to meet his existing obligations, and had determined to file his petition in insolvency, of which fact the directors and officers of the Union Savings Bank of San Jose had notice; and it is further alleged "that the condition of the said bank was such on the 25th day of May, 1898, that the filing of said petition of said Edward B. Howard would cause the said bank to suspend payment, close its doors, and go into liquidation; and therefore, with the intent and purpose of fully canceling, annulling, waiving, and releasing the indebtedness of said Edward B. Howard then and there owing said bank, to wit, the sum of about $237,479.66, and with the intent and purpose of preventing the said Edward B. Howard from filing his petition in insolvency, and becoming an insolvent debtor, and for the further consideration that said Edward B. Howard would pay to and turn over and deliver to the said bank all the money coming in to the credit of said Howard & Co. as payment for the season's fruit business of 1897, to be applied to the indebtedness of said Edward B. Howard to the said bank, the said bank, through and by its president, H. Ward Wright, canceled and satisfied, waived and released, said debt of Edward B. Howard." These allegations of the petition were put in issue by the answer of the Union Savings Bank of San Jose, and thereafter the matter came on regularly to be heard before the referee, and an order was made by him refusing to reduce the claim of the Union Savings Bank of San Jose. The questions arising upon the exceptions taken to the findings and order of the referee have been certified to the judge of this court for review, in accordance with the provisions of rule 27, General Orders in Bankruptcy (32 C. C. A. xxvii., 89 Fed. xi.).

The whole controversy in this proceeding turns upon the question whether the Union Savings Bank of San Jose did in fact release, as is alleged in the petition, all that part of its claim against the bankrupt which existed on May 25, 1898. Upon this question of fact the burden of proof is upon the petitioning creditor, Cox. It is

a conceded fact that on May 25, 1898, the bankrupt entered into some agreement with the Union Savings Bank, acting through its president, concerning the indebtedness referred to. The agreement was oral, and there is in the testimony a most decided conflict as to its terms. This agreement rested in parol until the 28th of the following month, when the bankrupt and the president of the Union Savings Bank signed a written memorandum of its terms. The memorandum was executed at the request of the bankrupt, and is in the following words:

"San Jose, Cal., June 28th, 1898.

"We understand that all money coming in to the credit of Howard & Co. which is payment for the season's fruit business of 1897 shall be applied on the indebtedness of Howard & Co. for said season of 1897, and all money coming in to the credit of Howard & Co. for the present season's business shall be held for his credit for business of 1898, including an amount of $25,000 from Higgins & Beach Co., drawn June 9th, 1898.

"Union Savings Bank of San Jose,

"H. W. Wright, Pt.

"Howard & Co."

It may be here remarked that the bankrupt was doing business under the name of Howard & Co. It is manifest that, if the terms of the agreement are correctly set forth in this memorandum, the bank did not thereby release any part of the bankrupt's indebtedness to it. According to this memorandum, the bankrupt was to have the right, as against the bank, to retain for his current expenses the entire proceeds of his fruit business for the season of 1898, and the money which he might receive on account of the business of the preceding season was to be applied by him as a payment on his indebtedness to the bank for the season of 1897,—that is, upon his then existing indebtedness to the bank; and there was no express or implied agreement upon the part of the bank that, in consideration of such application of the proceeds of the bankrupt's fruit business for the year 1897, any balance of such indebtedness which might thereafter remain should be released by it. This memorandum is, in form, a written admission that there was an existing contract between the parties, and is to be given precisely the same legal effect as if it had been executed immediately upon the completion of the oral agreement of May 25, 1898, for the purpose of preserving a written memorial of the terms of that agreement; and, in the absence of clear and convincing proof that there was fraud or mistake in its execution, it is mutually binding upon the parties thereto and their privies, and must be deemed the highest evidence of the terms of the agreement to which it refers. Indeed, it may be said that it constitutes the contract between the parties. It is not claimed that there was fraud connected with the execution of the memorandum, nor is the evidence sufficient to overcome the legal presumption that it correctly states the terms of the agreement to which it refers. The order of the referee is therefore affirmed.